## *In re* ESTATE OF PEET.

1. **Estates of Decedents: ALLOWANCE TO WIDOW: ANTENUPTIAL CONTRACT.** An antenuptial contract provided that during the marriage of the parties neither should be restricted in the control or disposition of his or her property, real or personal, and that either might execute deeds of conveyance without the consent or signature of the other, the same as if unmarried; that the wife should claim no right of dower or homestead in any property of the husband's estate, in case she should survive him, but that, in that case, she should be paid a certain named annuity out of the estate. *Held* that the clause as to the right to dispose of property did not refer to or include a disposition by will, and that the contract, followed by a will in which the stipulated annuity was alone given to the widow, did not defeat her right to an allowance to a year's support, under section 2375 of the Code.

2. ———: ———: **AMOUNT: MATTERS TO BE CONSIDERED.** An allowance for the support of the widow for one year after the death of the decedent, under section 2375 of the Code, is to be made only when necessary, but the necessity is to be determined largely from the facts of each particular case; and it is proper to consider the resources of the petitioner in her own right, the extent of the estate, the demands upon it, the health of the petitioner, her station in society, and such other matters as are necessary and reasonable. In this case an allowance of eight hundred dollars to a widow without children is *held* not to be erroneous, the estate being worth thirty thousand dollars.

3. ———: ———: **PRIORITY OF CLAIM.** It is no valid objection to making an allowance for the temporary support of a widow, under section 2375 of the Code, that the property has all been disposed of by will, which has been admitted to probate, and that, therefore, there is nothing out of which to pay the allowance; for, when necessary to be made, it is to be paid in preference to the debts of the estate, and these are preferred to the rights of the legatees. (See opinion for citations.)

*Appeal from Jones District Court.*—HON. JAMES D. GIFFEN, Judge.

FILED, JANUARY 30, 1890.

PROCEEDING in probate, in which Matilda Peet, as widow of J. M. Peet, deceased, seeks an allowance for support under the provisions of the statute. The

estate of J. M. Peet, at his death, consisted of upwards of thirty thousand dollars, mainly of notes and real estate. By the terms of his will the petitioner was to receive, while she remained his widow, the interest of three thousand dollars. All of the remainder of his property was bequeathed to his children. The provisions of the will in favor of the wife are as follows: "Before my marriage to my present wife, Matilda Peet, I made an agreement with her wherein provision was made for her out of my property, which antenuptial contract was filed and recorded in the office of the recorder of Jones county, in book 44, page 477; and I direct that my son William G. Peet pay to her the interest upon the money annually or oftener, as she may call for it, during the lifetime of my said wife, as provided in said antenuptial contract. And I give and bequeath to my said wife, Matilda Peet, during her life, in case she remains my widow, the interest upon three thousand dollars, said interest to be paid to her as above directed, unless she shall marry again, and in such case the same shall cease, and she shall not be entitled to anything thereafter." The following is the antenuptial contract referred to: "Article of agreement made and concluded this third day of July, A. D. 1877, by and between James M. Peet, of Fairview, Jones county, Iowa, party of the first part, and Matilda Weaver, of Anamosa, Iowa, party of the second part, witnesseth: That in consideration of a promise of marriage by and between said parties it is hereby mutually agreed by and between said parties that during their marriage neither party shall, in any manner, be restricted in the control or disposition of their property, both real and personal, which they have or may hereafter acquire; and either may execute deeds of conveyance without the consent or signature of the other, the same as if unmarried. And said second party, in consideration of aforesaid, hereby agrees to claim no right of dower or homestead in or to any property which shall belong to the estate of said party of the first part at the time of his decease, provided she shall survive him. And said

first party, in consideration of the promise aforesaid, hereby agrees that, in case said second party shall survive said first party, said second party shall be allowed and paid out of the estate of said first party, by his executors or heirs, the interest on the sum of three thousand dollars ($3,000); which interest shall be paid annually from and after my decease during the widowhood of said second party." Other facts as to the health and financial condition of the petitioner appear in the record, which may be referred to in the opinion. The foregoing statements are sufficient for the main question in the case. The district court made an allowance of eight hundred dollars to the petitioner. The executor appeals.

*Ezra Keeler* and *J. W. Jamison*, for appellant.

*Remley & Ercanbrack*, for appellee.

GRANGER, J.—I. The question is first presented as to the right of the court to make any allowance because

1. ESTATES of decedents: allowance to widow: antenuptial contract.

of the contract and the provisions of the will. The effect claimed for them is that they divest the court of any authority to make an allowance, under the provisions of the Code, section 2375, even though the facts, under other circumstances, would require it. In other words, as to the petitioner, they supersede the purpose of the statute. It is very manifest that the testator's purpose in the will was to carry out the terms of the antenuptial agreement, and that the limitations of the will as to the right of the petitioner are no greater than a fair construction of the agreement will warrant. To a clear understanding of appellant's claim, and the language of the agreement, relied on for its support, we quote a clause in his argument, which includes the language of the contract: "Our position is that the contract, in express terms, gives the right to dispose of all the property that he then owned or might afterwards acquire, and such right is given in the following clause of the contract: 'During their marriage neither party shall in any manner be restricted in the control or disposition of their property, both real and personal, which

they have or may hereafter acquire, and either may execute deeds of conveyance without the consent or signature of the other, the same as if unmarried.'" It is then urged that the right of disposition includes a right to dispose of it by will, and, as we infer, such being the effect of the contract, the will must receive that construction. This leads us directly to a construction of the contract as bearing on the point.

We think a fair consideration of the question involves a consideration of other language in the contract than that quoted; but without other language it is exceedingly doubtful if it would bear the construction claimed for it. It must be understood that contracts designed to divest the wife of the benefits of the statutes in her favor, after the death of her husband, and especially a statute providing for a necessary support, immediately following such death, must not be of doubtful interpretation, but specific and certain as to such intent. In general, the provisions of the statute in this respect embrace interests, not alone personal to the wife, but to the children, and in a sense to the public, and a law thus designed is to be guarded with caution. In this case there are no children to be affected, but in the approval of contracts, by which its provisions may be set aside, the general purpose and scope of the law is to be kept in view. The language of the contract quoted by appellant is but a single sentence, and was a provision for the disposition of property "during their marriage;" and the last clause of the sentence is, "and either party may execute deeds of conveyance without the consent or signature of the other, the same as if unmarried." There is nothing in the language referring to a testamentary right, and the language is such as naturally applies to the disposition of property otherwise than by will. The clause "during their marriage" is a limitation as to time, and is entirely unnecessary, and to be disregarded, in effect, if the construction urged is to obtain. A reference to the sentence, with such words omitted, will show how useless they are for the construction claimed. In fact,

it seems to us more than useless, as they seem to impress the sentence with a different meaning. We think it cannot be successfully claimed that the mere execution of a will during the life of the testator is the disposition of property. Of course, it is a step in that direction, but the property is not disposed of until the will becomes operative by the death of the testator. While the testator lives, he owns and controls the property. He may revoke the will at pleasure. During the life of the testator, how much more does a will dispose of his property than the law would dispose of it without the will? Each fixes the *status* of his property at death. They become effective as to an estate at the same time. As to the intestate the law stands in lieu of a will, and this is true both before and after the decease. A principal purpose of a will is to change the direction of the law as to the descent of property; and in its absence we assume that the provisions of the law are satisfactory, and adopted in its stead. It seems to us very clear that the mere execution of a will was not within the intent of the parties,—a disposition of property during marriage.

The contract, however, furnishes other reasons for believing the parties did not so intend. The careful reader of the contract will observe that it attempts: *First*, to provide for the mutual rights of the parties; and, *second*, to provide for the rights of the wife in the property of the husband after his death. Hence it will be seen that they are expressly contracting with reference to a subject that should, and naturally would, embrace the one under consideration. There is an express relinquishment of dower and homestead right in or to any property of the estate. While thus contracting as to her rights under the provisions of the law after his death, and specifying what should not be claimed, we must assume that if more had been intended it would have been expressed. The allowance claimed is not embraced in the dower, and, of course, not in the homestead. *Mahaffy v. Mahaffy*, 61 Iowa, 679. The cases of *Olleman v. Kelgore*, 52 Iowa, 38, and

In re Est. of Peet.

*Otto v. Doty*, 61 Iowa, 23, are not in conflict with this view. Those cases refer to the effect of a will after death and before probate. We do not say that the will at death would not have operated to dispose of the property, but it would not have been a disposition during marriage as contemplated by the contract. Inasmuch as the record discloses a probability of litigation as to the homestead, we refrain from any such consideration of the case before us as would in any manner intimate an opinion or prejudgment as to the question of either homestead or dower. With our view of the contract, the district court was not precluded by it from making an allowance to the widow, if otherwise entitled under the law.

II. It is urged that the provision of the will in favor of the petitioner is sufficient for her support without any allowance. The will gave her the interest of three thousand dollars, and it is doubtful if more than six per cent. could be realized, as the will specifies no rate per cent. It has been held that the district court has a discretion as to such allowances. *Caldwell v. Caldwell*, 54 Iowa, 457. We should not interfere where such discretion is fairly exercised. The testator was possessed of a good estate, and with his wife, until a few days before his death, kept a home where she continued to reside afterwards, at least a part of the time. In saying whether or not petitioner should have an allowance, it was proper for the district court to consider the resources of the petitioner in her own right; the allowance made her by the testator; the extent of the estate; the demands upon it; the health of the petitioner; her station in society; and such other matters as are necessary and reasonable. We assume that every husband designs this much in favor of his wife. The allowance is only to be made if necessary. Code, sec. 2375. The necessity is to be determined largely from the facts of each particular case. The district court, with the facts before it, adjudged an allowance necessary, and, in view of the record, we think justly so. Is the allowance too much?

*2. ——:——: amount: matters to be considered.*

It seems liberal, and yet, in view of the health of the petitioner, the extent of the estate, the scanty supply of provisions left by the executors, and, if petitioner shall be compelled to rent a home, her right to the homestead being questioned, we are not prepared to say that it is. It is not for us to say that the petitioner shall take just enough to board and clothe her in the most economical way, that legatees, who have before been abundantly provided for from the estate, may take more. We should rather sustain the action of the district court in such an allowance as in its judgment will yield a support commensurate with the wants and the rights of the petitioner, when to do so is not to deny creditors a full payment, nor a support to those dependent on the estate for it. In view of the facts, we are not disposed to disturb the amount of the allowance.

III. It is said that the law contemplates an allowance from the property of the estate (Code, sec. 2375), and that, as the property is disposed of by will, which has been admitted to probate, there is no property as a basis for the allowance. This allowance, when necessary, is to be paid in preference to the debts of the estate, and the latter are preferred to the rights of the legatees. *Estate of Dennis*, 67 Iowa, 110; *Estate of McReynolds*, 61 Iowa, 586. The action of the district court is

3. ——: ——:
priority of
claim.

AFFIRMED.