C. W. COFFMAN, Administrator v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

**Coupling Cars: Negligence.** Plaintiff's theory being that the brakeman was injured because two couplings were misfits and thus permitted the cars, unsupplied with bumpers, to come together, and that he stood between them when they met, there should be judgment *non obstante* where special findings show that decedent's signals for backing were obeyed, that he knew the kind of cars he was to couple, had coupled such before, and had been told how to couple them and not to stand between the cars, but at their side, when they came together.

**Special Findings: When Controlling.** Ordinarily, in determining whether special findings are inconsistent with the general verdict, the findings, verdict and the pleadings are alone to be considered; but it is proper, in that connection, to consider the admissions of the parties, whether made by the pleadings or by other means; and the theory of the successful party, as disclosed by his evidence, may be used in aid of construing his pleadings.

*Appeal from Shelby District Court.*—HON. WALTER I. SMITH, Judge.

THURSDAY, FEBRUARY 8, 1894.

ACTION to recover damages alleged to have been caused to the estate of plaintiff's intestate by negli-

gence on the part of defendant. There was a trial by jury, and a verdict and judgment for plaintiff. The defendant appeals.—*Reversed*.

*T. S. Wright*, *H. W. Byers*, and *Wright & Baldwin* for appellant.

*Turner, Smith & Cullison* for appellee.

Robinson, J.—On the fifth day of September, 1889, Edward A. Bennett was in the employment of defendant as brakeman on one of its freight trains. While engaged in the duties of his employment he assisted in placing in the front end of his train at Anita two cars owned by a man named Sutton, and known as "Dick Sutton's Uncle Tom's Cabin Cars" One was designed for the use of passengers, and the other for baggage and animals. The cars were coupled together, and were furnished with the Miller hook coupling. The train was run to Atlantic, where the Sutton cars were placed on a side track, for the purpose of changing them to the rear end of the caboose. The train was then moved westward, and was backed in on the side track, to have the Sutton cars coupled to the caboose. That was furnished with a common square-headed drawbar, and the coupling was to be made with a link and pin. Bennett went between the cars to make the coupling, and while there received injuries which caused his death. The plaintiff is executor of his estate, and alleges in the petition that the death of Bennett was caused by the negligence of the defendant as follows: *First*. In using defective, improper, and unsafe appliances to attach the Sutton car to the caboose; *second*, in directing the coupling to be made, and in pushing the cars together with such force as to cause the couplings to pass each other, thus allowing the cars to go together so closely as to crush the decedent between them; *third*, in ordering or permitting

its employees to haul the Sutton cars in the freight train; *fourth*, in not giving the proper signals to decedent, in not obeying his signals, in not furnishing him with proper appliances for making the coupling, and in not having each of the cars provided with bumpers so arranged as to protect the decedent when engaged in making the coupling. The jury returned seventeen special findings and a general verdict for the plaintiff for the sum of two thousand, five hundred dollars. The defendant filed a motion for judgment in its favor on the special findings notwithstanding the general verdict; and on the same day, and subject to that motion, it filed a motion in arrest of judgment, and for a new trial. The latter. was afterward withdrawn, and the motion for judgment was submitted, and overruled. Judgment was then rendered in favor of the plaintiff for the amount of the verdict and costs, to all of which the defendant excepted.

I.   The defendant insists that the special findings are inconsistent with the general verdict, and, if that is true, the motion for judgment in its favor should have been sustained. Code, section 2809. The special findings show the following facts:   Just before the decedent attempted to make the coupling he gave a signal to stop the train. The signal was repeated to the engineer, and he obeyed it. After that decedent gave a signal to back slowly, which was repeated to the engineer, and obeyed. No signal to stop was afterward given by the decedent. While he was in the service of the defendant, the ordinary and usual method of coupling a car provided with a Miller hook to a car provided with a common drawhead was first to insert the link and pin in the Miller hook, and then to set the pin in the common drawhead. When he entered the service of defendant, or soon after that time, he was instructed by his conductor as to the usual and ordinary way of making such a coupling, and was told that when making it

he should not stand between the cars, but at the side, when the cars were coming together. He had made couplings of that kind. He knew that in doing its ordinary business the defendants would receive, handle, and draw over its railway, in its freight trains, cars provided with Miller hooks. When his train was being placed on the side track at Atlantic for the purpose of having the coupling in question made, he was told by his fellow brakeman that the coupling would be to or with a Miller hook, and was cautioned to be careful while making it. It is claimed by appellant, and denied by appellee, that these findings cover all the material issues in the case. It was said in *Conners v. Railway Co.*, 71 Iowa, 492, 32 N. W. Rep. 465, that "to entitle a party to a judgment on special findings against a general verdict in favor of his adversary, the special findings must be inconsistent with the general verdict, and must of themselves, or when taken in connection with the facts admitted by the pleadings, be sufficient to establish or defeat the right of recovery." In this case the petition alleges that the appliances and apparatus used by the defendant in attaching the Sutton cars to its freight train were defective, improper, and unsafe to be used in such business, and that defendant was negligent in ordering the coupling to be made. It also alleges that defendant was negligent in pushing the cars together with such force as to cause the couplings to pass each other, thus allowing the cars to come together and crush decedent. The special findings do not show that the defendant was not negligent in those particulars, nor do they, considered alone, show that the decedent did not follow the instructions given him in attempting to make the coupling. But the petition shows that he was standing between the cars when injured, and one of the special findings shows that he was instructed that in making such a coupling "he should stand from between and at the side of the cars

when they were coming together, and make the coupling, and not stand between the cars when they were coming together.'' It is clear that, if he had obeyed that instruction, he would have escaped injury. It is said, the special findings do not show that there was no other usual and ordinary way to make such a coupling than that described, nor that the way in which the decedent attempted to make it was unusual and extrahazardous. It is not alleged in the petition that the couplers were not proper for the cars to which they were respectively attached. The averment that the appliances used for coupling the two cars together were defective, improper, and unsafe must be construed with other allegations of the petition; and, when that is done, it is apparent that the theory of the case on the part of plaintiff, and on which it was tried, is that the Miller hook was of the kind ordinarily used on passenger cars, and that it was so constructed that it did not fit the ordinary freight car coupling of the caboose; that, in consequence of the misfit, the couplings passed each other, and that there were no bumpers or other devices to prevent the cars from coming so close together as to crush the decedent. Ordinarily, in determining whether the special findings in a case are inconsistent with the general verdict, resort can only be had to the findings and verdict and to the pleadings, but it is proper in that connection to consider admissions of the parties, whether made in the pleadings or by other means. When the theory of the plaintiff as disclosed by his evidence is considered, it is clear that the construction we have placed upon the petition is correct. The decedent knew that he would be required to make couplings like that in question, and had made them. He had been instructed not to make such a coupling in the manner he attempted it, and was warned just before the attempt was made, to be careful. When the facts disclosed by the special findings and the pleadings are

considered, the conclusion can not be avoided that the negligence of decedent contributed to cause his death. We are of the opinion that the motion for judgment on the special findings should have been sustained. The judgment rendered is therefore REVERSED.