SARAH McCORNACK, Appellee, v. C. B. PICKERELL, Appellant.

No. 44448.

FEBRUARY 7, 1939.

Thos. E. Mullin, E. F. McEniry, and Gibson, Stewart & Garrett, for appellant.

O. M. Slaymaker, R. E. Killmar, D. D. Slaymaker, and E. L. Carroll, for appellee.

HALE, J.—The plaintiff, Sarah McCornack, aged about 63 years, and residing near Cromwell, Iowa, on September 7, 1935, was riding in an automobile owned by a relative, the defendant C. B. Pickerell, which car was at the time driven by one Flora Donner with the consent of the owner. The car in which she was riding was traveling east, and at a point about two miles west of Lockridge, Iowa, on highway No. 34, met a car owned and driven by one Maurice Worland, and a collision occurred in which the plaintiff was injured. The plaintiff was seated in the rear seat; Mrs. Donner was driving, and the de-

fendant was seated in the right front seat. The parties had started early in the day from Creston to go to Galesburg, Illinois, the defendant driving for about two hours, after which Mrs. Donner took the wheel and had been driving about one hour when they met the Worland car which was traveling west and was partly on its left, or south side of the road; how far on the wrong side of the center line of the road is not definitely shown, but it was so far on the south side that a collision would have been unavoidable if defendant's car had remained on its right side. Both cars were traveling at approximately 35 miles per hour, although the estimates vary somewhat as to the speed of the Worland Car. The road was the ordinary concrete highway, 18 feet wide, with dirt shoulders which the evidence shows were about 8 feet wide. The day was clear and the pavement dry.

When first sighted by the occupants of defendant's car the Worland car was some distance ahead, in the center and partly, at least, on the wrong side of the road. It appeared afterwards that the driver and another person on the front seat were examining a road map. Both the plaintiff and Mrs. Donner observed the movements of the approaching car. When the cars were in close proximity and it was apparent that if each continued in its course a collision was inevitable, Mrs. Donner turned defendant's car to the left; the collision occurred, each car striking the other on its right side. The plaintiff was thrown against the car and injured. Prior to the accident it is claimed by the plaintiff that she called Mrs. Donner's attention to the Worland car, which she says was weaving back and forth across the road, and it is undisputed that both plaintiff and defendant's driver saw the Worland car and saw that it was to some extent on the wrong side of the road.

Prior to the day of the journey the plaintiff was invited to make the trip to Galesburg with defendant and Mrs. Donner, where, she alleges, the defendant and Mrs. Donner were to be married, and that he wanted the plaintiff to be a witness. She states that she accepted the invitation, but told him that she would take a lunch along and would pay for one-third of the gasoline and oil. She did take the lunch, but defendant denies that she was to pay for gasoline, and it is undisputed that she did not pay for it but avers her willingness so to do.

As a result of the collision the plaintiff was injured, and she was taken to a hospital and afterwards to her own home. On

July 12, 1937, the petition was filed; issues were joined and trial was had. The allegations of the petition allege negligence on the part of the defendant's driver but do not make any claim under the guest statute.

At the conclusion of the plaintiff's testimony a motion for a directed verdict was made by the defendant, which will be referred to hereafter, and was overruled. The motion was renewed at the conclusion of all the testimony, and overruled. A verdict was returned in favor of the plaintiff and judgment entered thereon. Thereafter there were filed exceptions to the instructions, motion to set aside the verdict, and for a new trial, all of which were overruled and the case was brought to this court on appeal from the rulings on the various motions and exceptions.

The errors relied upon for reversal are: first, that the court erred in overruling defendant's motion for a directed verdict; second, in the giving of instructions Nos. 13, 14, and 15; and, third, misconduct of the plaintiff's attorney in argument. These will be noticed in their order.

One ground of the motion for a directed verdict is as follows:

"That there is no evidence to show that the plaintiff was occupying said car in any other capacity than as a guest of the defendant, and all of the evidence fails to show recklessness on the part of the driver of defendant's car."

It is the contention of the defendant that the case comes within the provisions of the guest statute, Code section 5026-b1:

"The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire, unless damage is caused as a result of the driver of said motor vehicle being under the influence of intoxicating liquor or because of the reckless operation by him of such motor vehicle."

This statute was enacted by the legislature in 1927, and has been reviewed several times in the opinions of this court.

It may be said here that the instructions of the court were based solely on grounds of negligence, as will be shown hereafter, and the action throughout, both in the pleadings and in the instructions, was confined to the question of negligence. Therefore, the question here is whether or not, as a matter of

law, the action is covered by the provisions of the guest statute. The plaintiff has contended throughout that she was riding as a paying passenger and that, on account of having contributed the lunch and agreeing to furnish a part of the gasoline, she would not come under the provisions of the statute quoted.

This court has several times since the enactment of the guest statute passed upon the question and distinguished between a passenger for hire and a guest. One of the most recent cases is that of Park v. National Cas. Co., 222 Iowa 861, loc. cit. 869, 270 N. W. 23, loc. cit. 27, an action for recovery under an insurance policy, in which in an opinion written by Justice Richards, it is said:

"It is apparent that the authorities quite generally concede that money passing from the passenger to the operator of a car, though associated with the carrying of the passenger, may or may not be a consideration for such carrying, within the meaning of a policy provision such as we are considering. In making the distinction the courts take into consideration not alone the bare transaction but all its surrounding circumstances, including among other things the status and relations of the parties one to another, the existence or lack of common interest, pleasure or benefit in the making of the journey, and the relation of the amount of the money to the actual costs of carrying. In the instant case the testimony is that, as occasion arose for filling an engagement, some member of the orchestra would voluntarily drive his car, carrying himself and other members. There was no contractual obligation resting on any member so to do. Apparently mere convenience determined which member would drive his car. But on each occasion the resultant burden on the driver of being out of pocket for the expense was inconsistent with the intention of the membership of the orchestra. This intention was that all should share equally in the earnings of the orchestra, and without any member 'going in the hole'. It was to avoid the unfairness and to carry out the intention of equal sharing that the arrangement was made that from the proceeds of each dance there should be turned over to whichever member happened to have driven his car four and one-half cents per mile traveled. The members estimated and agreed that the cost of driving such car amounted to four and one-half cents

per mile. They took into consideration as such cost the consumption of gas and oil and the wear on tires and car."

It is further said in the cited case, quoting from Clendenning v. Simerman, 220 Iowa 739, 747, 263 N. W. 248, 252:

" * * * it is a well-known fact that the outlay for gasoline is only one of the many expenses incident to the ownership and operation of an automobile."

■ It has frequently been held that the mere division of expenses among members of a party riding in an automobile does not render the person so contributing a passenger for hire. It has so been held by our own court and by the courts of other jurisdictions. See Master v. Horowitz, 237 App. Div. 237, 261 N. Y. S. 722; Askowith v. Massell, 260 Mass. 202, 156 N. E. 875 (both cited in Clendenning v. Simerman, supra); Gross v. Kubel, 315 Pa. 396, 172 A. 649, 95 A. L. R. 146. In the latter case it was held that the passenger had been transported for hire, and the court said:

"The arrangement for compensation under which he was carrying his passengers was more than a mere reimbursement for the gas and oil used by all in common on the trip. It went to the additional extent of compensating him for the use of the car. Had he been paid only a sum equivalent to the cost of the gas and oil used, a serious question might have arisen as to whether such payment would have constituted a carrying for hire."

It was also said, in the case of Reed v. Bloom, 15 F. Supp. 600, 601, United States District Court, Western Division Oklahoma (which case is cited and quoted from in the Park case above referred to):

"The authorities seem to draw a distinction between a case where a private automobile, under a contract and agreement, is used for the purpose of transporting persons as passengers for a definite sum, and where a private automobile is used incidentally for the transportation of persons and the persons so transported contribute a sum for the purchase of oil and gas. In other words, if the owner of a private automobile agrees in advance to transport a passenger from one place to another for

a definite sum, then that is recognized as being within the exclusions enumerated in the policy.''

This opinion quotes from Cartos v. Hartford Accident & Indemnity Ins. Co., 160 Va. 505, 169 S. E. 594, as follows:

''It may well be, as is suggested in Indemnity Ins. Co. of North America v. Lee, 232 Ky. 556, 24 S. W. 2d 278, that, where persons who are guests in an automobile, or are engaged in a joint venture with the owner or operator of the car, put gas in the car or contribute to the cost of purchasing gas for the trip which they are making, the owner or operator of the car is not carrying passengers for a consideration within the meaning of the exception here under consideration. But, wherever the facts are such that the operator of the car has cast upon him the duties and high degree of care that a person carrying another for compensation owes to the person so carried, the risk of liability for injuries arising from the negligence of the operator is excepted from the coverage by the provisions here under consideration.''

The case of Sullivan v. Harris, 224 Iowa 345, 359, 276 N. W. 88, 95, in an opinion by Justice Parsons, analyzes the guest statute and holds that the plaintiff, who was injured during the trip, was a guest and that defendant was not liable to her for negligence, but only for recklessness. In this case the evidence was reviewed, and summarized in the opinion as follows:

''So in the consideration of all of these matters we think it sums up to this: that the plaintiff and defendant were personal friends; the companionship of each was agreeable to the other; there was no thought of hire of any kind. The defendant merely asked the plaintiff if she would like to go to Minneapolis with her, and the plaintiff was willing to go. It is true defendant said plaintiff should do some of the driving. Plaintiff was a competent driver, so was the defendant; they were frequently in the company of each other, because it was agreeable to each; and the simple statement that plaintiff should do some of the driving, and plaintiff assented to it, does not make a contract, and does not take this case from under the guest statute.''

In this latter case the consideration, if any could be claimed, was that the person invited (the plaintiff) was to do part of

the driving. It was held, on the whole case, that this arrangement did not take the case out of the provisions of the guest statute.

In the instant case it appears from the testimony of the plaintiff herself that she was invited to go with the defendant on the trip to Illinois two or three weeks before the date of the trip, and that she volunteered to take the lunch along, and pay for one third of the gasoline and oil. She states in her testimony:

"I told Mr. Pickerell I would go if I could be permitted to pay a third of the gas and oil, take a lunch and help pay the expenses. I told him I would not go unless he would consent to that. He said, 'Well, that is all right with me. You may do it.' I did furnish the lunch and have always been willing to pay a third of the gasoline and oil."

She further testifies that she was requested to go for the reason that the defendant and Mrs. Donner were planning to be married and that the defendant wanted the plaintiff along. This does not seem sufficient, under the holdings of this court above referred to and the general rules laid down by other courts, to constitute the plaintiff a passenger for hire, but rather emphasizes the fact that she was a guest. There was no fixed sum of payment to be made, but a voluntary offer on the part of the plaintiff to pay for part of the gasoline and oil. Nor does it appear that she was to render any service, unless the fact that she was to act as a witness at the contemplated marriage might be so construed. She went by invitation, and in our opinion, following the rule which we believe to be the true one, she was a guest; and this being true the defendant could not have been held liable for mere negligence, and the motion for a directed verdict should have been sustained.

II. Our holding on the motion for a directed verdict renders it unnecessary to review at length the exceptions to the instructions which are relied upon by the defendant for reversal. The instructions given by the court to which exception was taken are Nos. 13, 14, and 15.

Instruction No. 13 refers to the duty of the driver to turn to the right and sets out the duty in the event of an emergency, and submits to the jury the question of whether or not the driver acted as a reasonably careful and prudent person in an emergency. We do not find serious objection to this instruction.

1084

But plaintiff's principal objection is made to instructions Nos. 14 and 15. Instruction No. 15 is as follows:

"It is the claim of the plaintiff that she was riding in defendant's car as a paid passenger. Her claim is that on the trip when she was injured she was riding in defendant's car under a contract agreement and arrangement whereby she was to pay for a portion of the gasoline and oil consumed on said trip. Under such circumstances, if you find that plaintiff was riding in said car under the agreement and arrangement with defendant whereby she was to pay for a portion of the gasoline and oil used by defendant's car as a compensation for her transportation then she was a passenger for hire within the meaning of the law. The owner or operator of a motor vehicle is liable for damages sustained by reason of his negligence, or by reason of the negligence of the driver of his car, if such driver is operating the car with such owner's consent, to a person proximately injured as a result of such driver's negligence while riding as a paid passenger, if such person so injured is herself free from contributory negligence."

Instruction No. 14 refers mainly to the liability of the owner of a motor vehicle for the negligence of the driver of a car driven with his consent; and states that the car was so operated with defendant's knowledge and consent. It did submit to the jury the question of the liability of the defendant in the event that the plaintiff was a paid passenger, and the instruction would have been correct had it not been for instruction No. 15.

Under our holding as to the status of the plaintiff we cannot approve of instruction No. 15. The court therein said:

"* * * if you find that plaintiff was riding in said car under the agreement and arrangement with defendant whereby she was to pay for a portion of the gasoline and oil used by defendant's car as a compensation for her transportation then she was a passenger for hire within the meaning of the law."

As indicated in division I of this opinion, we do not believe that such would be the law of the case under the facts as given. Therefore, on the question of plaintiff's status as a guest, and under this instruction, and the additional fact that there was nowhere presented to the jury, either in the pleadings or the instructions, the question of defendant's liability for reckless-

ness rather than for negligence, we are forced to hold that the plaintiff would not be entitled to recover.

■ III. Objection is made, and was made at the time of the trial, to the remarks of counsel for plaintiff in his closing argument. While the errors complained of, and which we hold are properly so complained of, would necessarily result in the reversal of the case, we feel that some attention should be given to the argument referred to, which seems to us to go further than is permissible. Reference was made in the closing argument to the fact that Mr. Pickerell would not have to pay, and the jury were told, "You people know exactly who will pay that verdict." The court informed counsel that this was as far as he could go, but counsel then repeated the statement, saying, "I just simply repeat it that you people know who will pay"; and further said, "It won't hurt the other side at all."

■ Complaint is also made to references to insurance in the examination of jurors, but the record thereof was not preserved and is not before us.

These statements, it is claimed by plaintiff, were warranted by the argument of defendant's counsel, and by the actions of his counsel throughout the case.

We have carefully examined not only the abstract and amendments thereto, but have read through the transcript of all the evidence and the arguments, which were fully reported, and we do not find any language or comment which would warrant the reference which was made by plaintiff's counsel. While it is urged that jurors often have in mind the fact that an insurance company will pay, and it has been held that reference thereto in the jury room is not sufficient ground for setting aside a verdict, yet we cannot feel that this is a proper argument or that the attention of the jury should be called to a matter of this kind which is extraneous to the issues and not proper matter for the consideration of the jury.

This court has several times passed upon this question and has frequently held that such conduct is not permissible. As has been said by this court, it is "repugnant to a fair trial or to the securing of the rendition of a just verdict on the facts that the jury should, by direction or indirection, be informed that the defendant will not suffer from an adverse verdict, and that some corporation will bear the consequences." See Miller v. Kooker, 208 Iowa 687, at page 690, 224 N. W. 46, at page 47,

and cases therein cited; Rutherford v. Gilchrist, 218 Iowa 1169, 255 N. W. 516, and cases therein referred to.

For the errors pointed out, we feel that the case should be, and it is reversed.—Reversed.

SAGER, HAMILTON, STIGER, BLISS, OLIVER, and MILLER, JJ., concur.